HARLAN v. TEXAS FUEL & SUPPLY CO. et. al.

(Court of Civil Appeals of Texas. Dallas. Nov. 22, 1913.)

1. SALES (§ 359*)—ACTIONS FOR PRICE—SUFFICIENCY OF EVIDENCE.

Evidence, in an action for the price of brick claimed to have been sold by plaintiff to defendant, *held* to show that the brick was sold to defendant and not to a contractor who was to build his house.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 511, 1056–1059; Dec. Dig. § 359.*]

2. MECHANICS' LIENS (§ 317*) — INDEMNITY AGAINST—ACTIONS—EVIDENCE.

In an action for the price of brick sold to defendant to erect his house, in which defendant filed a cross-action against the surety of the contractor, claiming that the unsatisfied claims for mechanics' liens exceeded the unpaid part of the contract price, evidence was admissible to support such claim as to the amount and value of labor and material furnished by certain witnesses for the building.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. § 659; Dec. Dig. § 317.*]

3. MECHANICS' LIENS (§ 128*)—PROCEEDINGS.

Under Const. art. 16, § 37, giving mechanics, etc., a lien upon buildings for the value of their labor or materials, and requiring the Legislature to provide for the enforcement thereof, a lien is not lost by the materialman's failure to file an itemized account of his claim, pursuant to statute, or to otherwise

comply therewith; the lien not depending on the statute.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. § 177; Dec. Dig. § 128.*]

4. NEW TRIAL (§ 104*)—NEWLY DISCOVERED EVIDENCE—CUMULATIVE EVIDENCE.

Where, after judgment was rendered against defendant in an action for brick furnished for his house, in which he filed a cross-action against a bonding company as surety for his contractor to recover for the contractor's failure to pay for the brick, it appeared that a judgment was rendered in another action against defendant, adjudging that he was entitled to credit for a certain sum, and that there was a balance due from him which balance was wholly insufficient to meet outstanding liens for labor and materials, a new trial should have been granted defendant, as against the bonding company, on the ground of newly discovered evidence; evidence of such subsequent judgment not being cumulative of evidence at trial as to the amount of materials furnished for the building.

[Ed. Note.—For other cases, see New Trial, Cent. Dig. §§ 218–220, 228; Dec. Dig. § 104.*]

5. NEW TRIAL (§ 104*)—NEWLY DISCOVERED EVIDENCE—"CUMULATIVE EVIDENCE."

Cumulative testimony is additional testimony of the same kind on the same question, and evidence is not cumulative, if it is of a different character, and tends to prove a question previously in issue by proof of a new and distinct fact.

[Ed. Note.—For other cases, see New Trial, Cent. Dig. §§ 218–220, 228; Dec. Dig. § 104.*

For other definitions, see Words and Phrases, vol. 2, pp. 1783, 1784.]

6. NEW TRIAL (§ 103*)—NEWLY DISCOVERED EVIDENCE—MATERIALITY.

The evidence as to the subsequent judgment and defendant's satisfaction thereof was material.

[Ed. Note.—For other cases, see New Trial, Cent. Dig. §§ 215–217; Dec. Dig. § 103.*]

Appeal from Dallas County Court; W. F. Whitehurst, Judge.

Action by the Texas Fuel & Supply Company against Harry Harlan and others, in which defendant filed a cross-action against the General Bonding & Casualty Insurance Company. From a judgment for plaintiff against defendant Harlan and against such defendant in favor of the Insurance Company, he appeals. Affirmed as to plaintiff and reversed and remanded for new trial on the cross-action.

W. P. Donalson, of Dallas, for appellant. Flippen, Gresham & Freeman, of Dallas, for appellees.

TALBOT, J. This is a suit brought by the Texas Fuel & Supply Company, a partnership, against Harry Harlan, as defendant, to recover the sum of $350, the value of 17,500 face brick alleged to have been purchased of plaintiff by defendant Harlan about February 20, 1912. Defendant Harlan filed his second amended answer and cross-action on which the cause was tried (1) denying the purchase of said brick and his liability for the payment thereof, and (2) alleged that he had contracted with one C. F. McMahan to build a house for him, said McMahan to furnish all labor and material and complete the same, that to insure the faithful performance of such contract said McMahan, as principal, and the defendant General Bonding & Casualty Insurance Company, as surety, executed and delivered their certain bond payable to him, said Harlan, in the sum of $4,200, and that should he, said Harlan, be held liable in this cause for the payment of the brick in question, then, inasmuch as he furnished said brick to said McMahan, and said brick were used in the construction of said house, said McMahan and defendant bonding company, under the terms and conditions of said contract and bond, will be liable to him for such sum of money and judgment as plaintiff may recover against him, said Harlan, and prayed judgment. Defendant Harlan also set out a large number of mechanics' and materialmen's claims, which were in litigation in the Sixty-Eighth district court of Dallas county, Tex., for the purpose of showing that the unpaid portion of the contract price of the building in question was far less than the amount of such claims, and was far less than the plaintiff's claim, and that therefore he was unable to offset plaintiff's said claim out of such unpaid portion of the contract price of said building. Defendant Harlan also alleged that the said McMahan was insolvent, and was beyond the limits of the state of Texas, that his whereabouts were unknown, and that he had no property in Texas, to the knowledge of said Harlan, through which service might be had. Defendant bonding company answered by numerous demurrers and general denial. The case was tried by the court on January 9, 1913, without a jury, which rendered judgment in favor of plaintiff against defendant Harlan for the sum of $350, and further rendered judgment that the defendant Harlan take nothing as against defendant bonding company on his cross-action. His motion for a new trial being overruled, Harlan appealed.

[1] There was no error in rendering judgment in favor of the plaintiff, Texas Fuel & Supply Company, against the defendant Harlan. The practically undisputed evidence shows the personal liability of this defendant for the price charged for the brick in question, so far as the Texas Fuel & Supply Company is concerned. It shows that he personally selected the brick and said he would take them. The brick were delivered to him, and statements of account rendered him therefor, and he did not claim at that time that they were purchased by him for his contractor, McMahan, and seek to avoid his liability for the price of the same until some time after they had been used in the erection of his building.

L. Fife, one of the plaintiffs, testified: "On or about February 15, 1912, Mr. Harlan stated to me that he desired to look at some brick; that he was going to build and wished

to determine the character of brick that should be used. We took him to several houses that were built of brick we sold, and after several days he determined on the brick in question. He stated that he would take that particular brick, and we delivered the brick in question to him, which were of the same kind that he ordered, and they were placed in the house that was being built for him in Oak Cliff. We charged these brick to his account and sent him a bill for them. * * * The brick bought by Harry Harlan consisted of 17,500 face brick, and these brick were of the reasonable market value of $350; the price charged therefor, and same have never been paid for. Harry Harlan did not state to us that he would not be responsible for the payment of the brick, nor did he tell us to charge them to ·McMahan until long after they were delivered and placed in the house. We never saw or knew McMahan in the transaction at all, but charged and sold same to Harry Harlan personally. * * * We did not know McMahan at the time, but afterward found that he was the contractor for the building. We would not have sold the brick in question to McMahan."

The defendant Harlan testified: "I selected the brick in question as the kind I wanted to go in the house. I personally selected the brick that suited me for the job in question, but there was nothing said about my personally buying any brick, or that the brick in question should be charged to me. * * * Some time after the brick had been delivered I got a bill from the plaintiff, and saw that they had charged the brick to me. Later * * * I received another bill after the brick had been placed in the house, and I immediately wrote them that this was a mistake, and that the brick was not to be charged to me at all, but to McMahan, which they refused to do. I had a contract with C. F. McMahan, the contractor, by the terms of which he was to build and complete the house, furnishing all labor and material for such at his own cost and expense, and I had been told by him to go and select the brick I desired to use on this job. I do not know whether Mr. Fife knew this fact or not." Under this testimony the trial court could not properly do otherwise than render a personal judgment against Mr. Harlan for the contract price or value of the brick.

[2] Appellant's first assignment of error, according to numbers in the brief, complains of the court's action in refusing to permit him to show by witnesses present in court that they, said witnesses, had furnished certain labor and material that went into and became a part of the building in question, and that the value of such labor and material aggregated the sum of $1,431.46, that said sum of $1,431.46 had not been paid, and that they, said witnesses, had given notice to defendant Harlan of their claims for said labor and material, and that they were asserting mechanics' and materialmen's liens upon and against said building. The main propositions submitted under this assignment are: (1) "Where mechanics and materialmen furnish labor and material to a building contractor for the purpose of, and which is used in, constructing a building, the Constitution creates and fixes a lien upon such building and the land upon which it stands—as against the owner of same—in favor of such mechanics and materialmen, without requiring any further action on their part than (at most) giving notice to such owner of their claims." (2) "Upon the trial of a suit against an owner of a building for the purchase price of brick alleged to have been bought from plaintiff by such owner, where it is shown that such brick were delivered to and actually used in the erection and construction of such building; and where the contractor, at his own cost and expense, contracted to furnish all labor and material to be used in the erection and construction of such building; and where such contractor and his surety have executed and delivered a bond, payable to such owner, to insure the faithful performance of such contract; and where the owner has asked judgment over against such surety (said contractor being shown to be insolvent and beyond the limits of the state), for such sum as the plaintiff might recover against him on the purchase price of such brick— the owner is entitled to introduce evidence of unsatisfied and outstanding mechanics' and materialmen's liens and claims upon and against the building and property upon which it is located for the purpose of showing that any part of the unpaid contract price of such building which he may have in his hands cannot be held or applied by him to protect himself against a judgment for the purchase price of the brick sued for." The bill of exception reserved to the exclusion of this testimony shows that it was offered to establish appellant's contention that the unsatisfied claims of the mechanics and materialmen who had performed labor and furnished material in the erection of the building in question greatly exceeded the unpaid portion of the contract price of said building, for which appellant, Harlan, was liable by and under the terms of the building contract entered into between appellant and McMahan. The bill further shows that the admission of the testimony was objected to on the ground ·that the same "was irrelevant and· immaterial to any issue in the case, and did not tend to show that any valid lien had been fixed" upon appellant's said building. We think the court erred in excluding this .testimony. McMahan contracted and agreed with appellant to furnish all labor and material and build his house for the sum of· $4,200. To secure the faithful performance of chis contract McMahan entered into a bond in the sum of $4,200 with appellee General Bonding & Casualty Insurance Company as surety. It was his duty, and he was, bound by the terms of his contract with ap-

pellant to furnish the brick in question. For him and at his request appellant procured the brick from the Texas Fuel & Supply Company, and while, as between appellant and said company, appellant was personally liable to the latter for the value of the brick, McMahan was liable to appellant for their value, and, McMahan having failed to pay for the brick, he to that extent breached his contract with appellant, and the General Bonding & Casualty Company, as surety on McMahan's bond, was liable therefor. The effect of the bond executed by the bonding company was to indemnify appellant against any loss ae might sustain by reason of Mc-Mahan's failure to furnish the labor and material and construct the building according to contract. If, however, appellant had in his hands a sufficient amount of the contract price of the building, which was not subject to the payment of other claims against McMahan secured by mechanics' and materialmen's liens on appellant's building, to pay off and satisfy the purchase price of the brick, then he was in a position to protect himself from loss by reason of McMahan's failure to pay the Texas Fuel & Supply Company for the brick in question, and the bonding company would be relieved from liability therefor. The contention of appellant was that he did not have such an amount in his possession, and the testimony excluded tended to establish this contention, and should have been admitted.

[3] Section 37, article 16, of our Constitution, declares that: "Mechanics, artisans and materialmen, of every class, shall have a lien upon the buildings and articles made or repaired by them, for the value of their labor done thereon, or material furnished therefor; and the Legislature shall provide by law for the speedy and efficient enforcement of said liens"—and it has been held that this lien does not depend upon the statute enacted by the Legislature in obedience to the directions given in the latter clause of the section, and is not lost by the failure of the mechanic or materialman to file in the office of the county clerk an itemized account of his claim, as directed by statute. It is said, in effect, that it was the intention of the members of the convention which framed and adopted this section of the Constitution to give full and ample security to all mechanics, artisans, and materialmen for labor performed and material furnished for the erection of all buildings and other improvements, and the courts must give such construction to its language as will carry out that intention. Strange v. Pray, 89 Tex. 525, 35 S. W. 1054; Beilharz v. Illingsworth, 132 S. W. 106; Bank v. Taylor, 91 Tex. 78, 40 S. W. 876, 966. It was not claimed that the premises involved in the controversy were appellant's homestead, and the evidence showed that of the contract price of the house appellant had only the sum of $265.35. The testimony excluded was not therefore inadmissible be-cause appellant did not propose or offer to show, as a prerequisite to its admissibility, that the parties claiming to have furnished labor and material to erect appellant's building, and of which claims notice had been given appellant, had fixed liens upon said building as provided by statute, as we judge from the bill of exceptions, the lower court held to be necessary.

[4] But, if we should be mistaken in the views expressed, and it was necessary to show, in order to render the testimony offered admissible, that the parties claiming to have furnished labor and material for the erection of appellant's house had fixed liens upon said house as prescribed by statute, still we think the case as between appellant and the General Bonding & Casualty Company must be reversed and remanded for a new trial, because of the lower court's failure to grant a new trial upon appellant's amended motion therefor. In this motion, and upon the hearing thereof in the county court, it was shown without contradiction, as we understand the record, that since the rendition of the judgment in this case, and on February 22, 1913, a judgment was rendered in the district court of Dallas county, Tex., in the cause of Boatman Hardware Company v. C. F. McMahan et al. No. 12,012C, in which cause appellant was also a party defendant, wherein it was expressly adjudged and decreed that defendant Harlan had paid on, and was entitled to and allowed credit for, the contract price of the building in question the total sum of $3,934.65, and that there was a balance due and owing thereon by him of $265.35; that Boatman Hardware Company, a corporation, L. Hanks, J. G. Clardy, J. E. McKeen, C. A. Campbell, B. B. Frost, J. A. Welch, Charles D. Allen, C. B. Von Der Hoya, and J. L. Markham Lumber Company, a corporation, have each and all established and proven up their respective claims for labor performed and material furnished in the construction of said building by the contractor, McMahan, in the total sum of $1,431.46, and that said building and property, to the extent of said sum of $265.-35, balance due and owing by said Harlan, was decreed to be subject to the materialmen's and mechanics' liens of said parties to secure its payment, which liens were established and foreclosed, and that said Harlan has paid the sum of $265.35 to and for the benefit of said parties, and has therefore paid the full sum of $4,200, which was the contract price of and for said building, and which is the full sum for which he became and was liable by and under the terms and provisions of said building contract. This judgment was not in existence at the time the present case was tried, and the general rule applicable, ordinarily, in cases where newly discovered evidence is relied on for a new trial, does not apply. The failure to exercise diligence to discover this evidence was not a question involved, and the new evi-

dence introduced on the hearing of the motion for a new trial was not merely cumulative.

[5] Cumulative testimony is additional testimony of the same kind, to the same point. It is not cumulative when it is of a different character, and tends to prove even a former proposition in issue by the testimony, by proof of a new and distinct fact. Railway Co. v. Forsyth, 49 Tex. 171; Wolf v. Mahan, 57 Tex. 171.

[6] The testimony offered by appellant on his motion for a new trial in this case was original evidence, which he was unable to produce on the trial because it was not in existence, to establish a new fact, which fact tended to establish his alleged right to a judgment over against the General Bonding & Casualty Company in the event the appellee, Texas Fuel· & Supply Company should recover a judgment against him for the value of the brick involved in this suit. The materiality of the new evidence is manifest, and we think appellant's motion for a new trial as between appellant and the General Bonding & Casualty Company should have been granted. Railway Co. v. Barron, 78 Tex. 421, 14 S. W. 698.

The judgment of the lower court will therefore, in so far as it is in favor of the Texas Fuel & Supply Company, and against appellant, be affirmed, but in so far as it is in favor of the General Bonding & Casualty Insurance Company and against appellant on his cross-action is reversed, and that branch of the case is remanded to the county court for a new trial.