**Vincent MURPHY, Appellant,**

v.

**Larry Wayne WALDRIP, Appellee.**

**No. 2–84–211–CV.**

Court of Appeals of Texas,
Fort Worth.

June 19, 1985.

Banner, McIntosh & Dobbs and Jack Banner and Dottie Murphy, Wichita Falls, for appellant.

Fillmore & Associates and H. Dustin Fillmore and K. Marvin Adams, Fort Worth, for appellee.

Before JORDAN, ASHWORTH and HOPKINS, JJ.

## OPINION

HOPKINS, Justice.

This appeal from a judgment awarding appellee, Larry Wayne Waldrip, substantial damages, both actual and exemplary, for two alleged assaults by appellant, Vincent Murphy, presents questions on evidentiary sufficiency, jury instructions, counsel jury argument and conduct, excessiveness of awards, injection into the trial of appellant's purported wealth and extraneous activities, and an alternative request for remittitur.

Our review of the twenty-one points of error reveals no reversible error and, therefore, we affirm.

Appellant and his brother were owners of the surface only of land on which appellee planned to drill an oil and gas well. Appellant had expressed concern about the location of a roadway across the property to the well site and was in the office of his attorney inquiring as to appellee's right to explore for minerals at the time he received a telephone call telling him appellee was at the well site. Upon receiving an opinion from his attorney that appellee was committing a trespass, appellant immediately went to the well location, where the first of the alleged assaults occurred. The second assault occurred while appellee waited for appellant to unlock the gate so that appellee could leave the premises pursuant to the demand of appellant. Appellee received no physical wounds and was never medically treated for physical or emotional injuries. Both assaults were committed by threats upon the life of appellee by appellant with the use of loaded firearms. The jury awarded $125,000 actual damages for mental anguish suffered by appellee, $50,000 for the first assault and $75,000 for the second assault. The jury also awarded exemplary or punitive damages of $200,000 for the first assault and $300,000 for the second assault.

In points one and nineteen, appellant contends there is no evidence or, alternatively, insufficient evidence to support the amount of the jury award of either actual or punitive damages. In points four, five, six and twenty it is asserted the excessive awards resulted from appellee's injection into the trial the matter of appellant's purported wealth. In points twelve, thirteen, fourteen, fifteen and sixteen, appellant states that the argument and sidebar remarks of appellee coupled with the necessity of appellant making fifteen motions for mistrial caused the jury to return an improper verdict based on bias, prejudice or other improper motive. We find appellant's contentions to be without merit. Since all of these matters relate to the amount of the award, we will consider them together.

The amount of damages suffered is a fact issue to be determined by the jury and should not be disturbed by this court if supported by sufficient evidence, when viewed in the light most favorable to the jury award. *See Allen v. Roark,* 625 S.W.2d 411, 417 (Tex.App.—Fort Worth 1981), *rev'd on other grounds,* 633 S.W.2d 804 (Tex.1982); *Bill Hendrix Auto Parts v. Blackburn,* 433 S.W.2d 237, 240–41 (Tex. Civ.App.—Houston [14th Dist.] 1968, no writ).

In determining a "no evidence" point, we are to consider only the evidence and inferences which tend to support the finding of the jury and disregard all evidence and inferences to the contrary. *See International Armament Corporation v. King,* 686 S.W.2d 595 (1985); *Stodghill v. Texas Employers Insurance Association,* 582 S.W.2d 102, 103 (Tex.1979). If there is any evidence of probative force to support the finding of the jury, the point must be overruled and the finding upheld. *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661–62 (1951).

A "no evidence" point of error must and may only be sustained when the record discloses one of the following: (1) a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or

evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla of evidence; (4) the evidence establishes conclusively the opposite of a vital fact. *Royal Indemnity Co. v. Little Joe's Catfish Inn, Inc.*, 636 S.W.2d 530, 531 (Tex.App.—San Antonio 1982, no writ); Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 Texas L.Rev. 361 (1960).

■ Where the challenge to a jury finding is framed as an "insufficient evidence" point, we are to consider all the evidence in the case, both that in support of and that contrary to the finding, to determine if the challenged finding is so against the great weight and preponderance of the evidence as to be manifestly erroneous or unjust. *See Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965). If the court so determines, the finding should be set aside and a new trial ordered. *Id.*

■ In considering an "insufficient evidence" point, we must remain cognizant of the fact that it is for the jury, as the trier of fact, to judge the credibility of the witnesses, to assign the weight to be given their testimony, and to resolve any conflicts or inconsistencies in the testimony. *See Taylor v. Lewis*, 553 S.W.2d 153, 161 (Tex.Civ.App.—Amarillo 1977, writ ref'd n.r.e.). This court may not substitute its judgment for that of the jury if the challenged finding is supported by some evidence of probative value and is not against the great weight and preponderance of the evidence. *See Alford, Meroney & Co. v. Rowe*, 619 S.W.2d 210, 213 (Tex.Civ.App.—Amarillo 1981, writ ref'd n.r.e.).

■ It is clear from the record that the jury had before it evidence of the outrageous character of the assault by appellant. Upon arriving at the site, appellant entered and locked the gate and drove to the well location. Appellant got out of his pickup with a .22 rifle, chambered a shell and pointed the rifle at appellee's head. Appellant cursed, threatened to kill appellee and ordered him off the premises.

When appellee got into his car and started to leave, appellant rammed appellee's car and proceeded to push appellee from behind with appellant's pickup. When they reached the locked gate, appellant stopped his pickup behind appellee's car, got out with a loaded shotgun which he cocked and began poking appellee in the upper body with the muzzle of the gun and again threatened the life of appellee. There was testimony appellant switched weapons because he found the .22 had jammed and couldn't be fired. Appellee testified he was "absolutely terrified" that his life was going to end at any time and that he thought he was a "dead man". Other witnesses to the events said they were afraid appellant was going to kill appellee, one of whom stated he saw appellee later in town and that appellee was "shaking, still real white, still couldn't talk." Appellee testified that at the time of trial he was still worried about "running across that man [appellant] again."

The jury had the opportunity to observe the appearance and demeanor of the witnesses as they described the events that occurred. The record does not reveal that the minds of the jurors were so controlled by passion, prejudice or bias as to render them unwilling to consider the merits of the case. The evidence being sufficient to support the awards of both actual and punitive or exemplary damages, points of error one and nineteen are overruled.

■ The amount of such damages must not, however, be based on improper evidence. It is reversible error to inject into the trial a party's wealth. *Young v. Kuhn*, 71 Tex. 645, 9 S.W. 860 (1888); *First Nat. Bank of Marshall v. Beavers*, 619 S.W.2d 288 (Tex.Civ.App.—Texarkana 1981, writ ref'd n.r.e.). The following testimony of which appellant complains was given by the witness Rice while being questioned by appellee's attorney relative to a prior altercation between the witness and appellant over alleged damage to a gate and bridge:

Finally he [appellant] blew up—I kind of blew up myself, and I told him—well,

first he told me, he said, 'You stay off this lease. Don't come back on it,' he said, 'until you put up a new gate and have that bridge repaired.' I said, 'I did nothing to your bridge; I did nothing to your gate; and I had the gate repaired.' And then he kept cussing me and calling me a liar, and he said, 'You stay out of here,' and he said, 'I have enough money to make sure that you don't come out here,' and he said, 'I am fixing to sue a bunch of the people out here,' ...

In examination of the witness Shelnutt by appellee concerning previous happenings between the witness and appellant, the following questions and answers were given of which appellant complains:

Q. What happened on that occasion?

A. He stopped the crew. We were working on a well. He drove up and stopped the crew from working. I drove down to see what the problem was, and I told him, I said, 'There is four of you all, and there is me.' He says 'Don't work any more,' ... He said, 'Well, I am not going to say you can't, but come here.' I went over to the car.

Q. Whose car?

A. His car. He got in, he uncovered a pistol, and he says, 'I am going to sue every one of you, or I will kill you,' and he said, 'I have got fifty-nine million dollars that I will make more money out of this than you all do.' I said, 'Vincent, if that is all you have got, why don't we just buy you out and get you out of your misery?'

We believe it is important to note that the issue of appellant's wealth was not made the subject of inquiry by appellee, but was given in both instances by the witness in response to questions about previous altercations between the witnesses and appellant. Additionally, we find no objection made by appellant to the testimony of the witness Rice, therefore, any error there may have been was not preserved. As to the testimony of the witness Shelnutt, no objection was made at the time the testimony was given, nor during appellant's subsequent cross-examination. The

witness was excused and it was not until the next morning that appellee complained of Shelnutt's testimony by stating his motion for a mistrial. When the trial court inquired of appellant if he requested that an instruction to disregard the testimony be given the jury, appellant's response was, "No, sir. I want a motion for mistrial granted." The motion was overruled. After dialogue between the appellee's attorney and the court, appellant requested an instruction to "disregard" which was refused.

 Since the testimony was before the jury without objection, it was not error for the trial court to overrule the motion for mistrial. It is within the discretion of the trial judge to allow or deny withdrawal of evidence from the jury's consideration. *See Gayle v. Dixon*, 583 S.W.2d 648, 651–52 (Tex.Civ.App.—Houston [1st Dist.] 1979, writ ref'd n.r.e.) quoting the Supreme Court in *Railway Co. v. Lamothe*, 76 Tex. 219, 13 S.W. 194 (1890):

Objections not made to the introduction of evidence when it is offered, but afterwards, in the form of a motion to exclude it generally, deserve a less favorable consideration than when made at the time. Usually, some reason for the delay in urging the objection ought to be made to appear, and the decision upon such objection ought to be left more to the discretion of the trial courts than when objections are interposed at the proper time.

In the present case, no reason was advanced for the delay. Due to the manner in which the testimony came in and the lapse in time before the instruction was requested, we hold there was no abuse of discretion by the trial court in refusing the instruction.

 Appellant also states that appellee's jury argument again injected the matter of appellant's purported wealth into the case when it was said, "With regard to the punitive damages, you know, I don't—I really doubt that $500,000.00 would have much of a deterring effect on Vincent Murphy." In reviewing appellee's jury argu-

ment and the objection posed by appellant, we are of the opinion that neither the quoted argument nor appellant's objection thereto related to the matter of appellant's purported wealth. Points of error four, five, six and twenty are overruled.

As to the matter of sidebar remarks, we have reviewed the record and find this case was tried vigorously by both sides. The remarks complained of were either invited by appellant, were not preserved by proper objection, or were not of such content as to have likely resulted in causing the jury to render an improper verdict. Furthermore, by appropriate instruction, the trial court instructed the jury not to consider the sidebar remarks of the attorneys in their deliberations. They were instructed to consider only the testimony and exhibits. We find this instruction sufficient to cure any error relating to sidebar remarks of counsel. Points of error twelve, thirteen, fourteen, fifteen and sixteen are overruled.

In point of error two, appellant contends the trial court erred in not submitting appellant's requested definition of "mental anguish" and in point three by sustaining appellee's objection to appellant's attempt to supply such definition during jury argument. We disagree.

The phrase "mental anguish" is not a legal term, but is of ordinary meaning and is of such common usage that it is easily understood by persons of average intelligence, and it is not necessary to define it. *See Gulf States Utilities Co. v. Reed,* 659 S.W.2d 849, 854 (Tex.App.—Houston [14th Dist.] 1983, writ ref'd n.r.e.); *Western Union Telegraph Co. v. Homer,* 157 S.W.2d 659, 662 (Tex.Civ.App.—Fort Worth 1941), *aff'd,* 140 Tex. 193, 166 S.W.2d 684, 687 (1942); *Enterprise Co. v. Ellis,* 98 S.W.2d 452, 455 (Tex.Civ.App.—Beaumont 1936, no writ). Appellant cites among his authorities the case of *K-Mart Corp. Store No. 7441 v. Trotti,* 677 S.W.2d 632 (Tex.App.—Houston [1st Dist.] 1984), *writ ref'd n.r.e. per curiam,* 686 S.W.2d 593 (1985). However, his argument is

weakened considerably by the following statement by the Supreme Court:

However, our actions should not be interpreted as approving of the Court of Appeals' statement that, '[T]he Trial Court failed to act in accordance with TEX.R. CIV.P. 273 and 277, by failing to provide the jury with a definition of "mental anguish," despite a requested definition offered by Appellants ... it is clear, therefore that mental anguish is a technical, legal term, and that the Trial Court should have defined that term for the jury in accordance with Rule 277.'

Charging the jury on the law and providing definitions in connection therewith is the function of the trial court and not counsel. Argument of counsel should be confined to the recorded facts and the law as given by the court. *See Texas St. Bd. of Reg. v. Dalton, Hinds & O'Brien Eng. Co.,* 382 S.W.2d 130, 136 (Tex.Civ.App.—Corpus Christi 1964, no writ); *Daniel Lumber Co. v. Settlemire,* 256 S.W.2d 922, 927 (Tex.Civ.App.—Beaumont 1953, writ ref'd n.r.e.). Appellant's points of error two and three are overruled.

Points of error seven and eight address the matter of the admission of evidence as to appellant's reputation for honesty, peacefulness and law-abidingness before appellant's reputation had been put in issue.

We hold that where exemplary damages are sought for a malicious tort, proof of the defendant's reputation as a peaceful and law-abiding citizen is admissible. *See Jameson v. Zuehlke,* 218 S.W.2d 326, 330 (Tex.Civ.App.—Waco 1948, writ ref'd n.r.e.). As to the testimony concerning appellant's reputation for honesty, it will be seen from the questions and answers following that the answer was an unsolicited, nonresponsive reply to the question:

Q. Do you know the reputation for peacefulness and law-abidingness of Vincent Murphy, back in December of 1982 and now, in the community among people who know him?

A. Yes, I do.

Q. What is that reputation as to peacefulness and law-abidingness?

[Objection overruled by the Court.]

A. His reputation is not real good for peacefulness and honesty.

Q. We are talking about peacefulness and law-abidingness.

A. Yes.

[Objection by appellant:] If it please the Court, I would object to the answer, and at this time move for a mistrial.

THE COURT: Overruled.

The specific ground of such objection was not stated and a general objection amounts to no objection at all. *See Wilkins v. Royal Indem. Co.*, 592 S.W.2d 64, 68 (Tex.Civ. App.—Tyler 1979, no writ). Appellant's points of error seven and eight are overruled.

By points of error nine, ten and eleven, appellant assigns error by the trial court in the admission of evidence about prior extraneous events involving appellant. The testimony complained of was given by the witnesses Rice and Shelnutt, a portion of which has been quoted in our discussion of points of error four, five, six and twenty. The evidence related to threats to the witnesses by appellant concerning incidents similar to the circumstances of this case, *i.e.*, entry upon appellant's land by third parties.

We hold that evidence of prior extraneous threatening conduct by appellant was admissible where exemplary damages were being sought for a malicious tort. *Burleson v. Finley*, 581 S.W.2d 304, 307–08 (Tex. Civ.App.—Austin 1979, writ ref'd n.r.e.); *Jaques v. Ellis*, 219 S.W.2d 104, 107 (Tex. Civ.App.—Dallas 1949, no writ); and *Jameson v. Zuehlke*, 218 S.W.2d at 326. However, should we be in error in this regard, the objections posed were insufficient to preserve error. *Wilkins v. Royal Indem. Co.*, 592 S.W.2d at 68; *Bridges v. City of Richardson*, 349 S.W.2d 644 (Tex.Civ.App. —Dallas 1961), *writ ref'd n.r.e. per curiam*, 354 S.W.2d 366 (Tex.1962). The objections cited in appellant's brief were:

If it please the Court, I see no relevance, no materiality, of the date or telephone conversation or anything else. It is just a waste of time.

\* \* \* \* \* \*

If it please the Court, so I won't have to make a continuous objection, can I have a bill to the entirety of it?

These objections do not clearly point out appellant's specific objection with sufficient particularity nor specificity. Appellant's points of error nine, ten and eleven are overruled.

In points of error seventeen and eighteen, appellant states the trial court erroneously instructed the jury as to punitive damages which permitted double recovery. The definition submitted by the trial court was as follows:

'EXEMPLARY OR PUNITIVE DAMAGES' means an amount that you may in your discretion award as punishment of the wrongdoer and as a warning and an example to prevent the wrongdoer and others situated like him from committing like offenses and wrongs in the future. In determining the amount you may consider the nature of the wrong, the character of the conduct involved, the degree of culpability of the wrongdoer, the situation and sensibilities of the parties concerned, and the extent to which such conduct offends a public sense of justice and propriety.

Appellant's objection to the definition covered portions of three pages in the statement of facts and is somewhat difficult to decipher and seems to violate TEX. R.CIV.P. 274, however, we will treat it as being that set forth in appellant's brief, *i.e.*, that the definition went further than that set out in the Pattern Jury Form Book, and that in permitting the jury to consider "the situation and sensibilities of the parties concerned," it allowed the jury to consider "mental anguish" a second time, thereby resulting in the opportunity for the jury to award a double recovery for "mental anguish". We find appellant's contention to be without merit.

**592**

Though the Pattern Jury Form Book is an excellent aid and guide for judges and attorneys in formulating jury issues and instructions, it is not intended to set forth the only language that may be appropriate on a given issue. The complained of addition to the "form book" definition is the identical language used by the Supreme Court in specifying the proper factors for a court to consider in determining whether an award of exemplary damages is reasonable. *Alamo Nat. Bank v. Kraus,* 616 S.W.2d 908 (Tex.1981). We can find no harm in instructing a jury that these factors may be considered by them in determining what sum, if any, would be a reasonable award as punitive damages. There is no support in the record that instructing the jury that they may consider "the situation and sensibilities of the parties concerned," resulted in a double recovery of damages for appellee's mental anguish. Appellant's points of error seventeen and eighteen are overruled.

By point of error twenty-one, appellant seeks to have this court order a remittitur which was denied by the trial court. An appellate court should not substitute its view of damages for that of the jury. The award of damages is within the discretion of the jury and should not be set aside as excessive unless there is a clear showing that passion, prejudice, or other improper matters influenced the jury. *See Southwestern Investment Company v. Neeley,* 452 S.W.2d 705 (Tex.1970); *International Harvester Co. v. Zavala,* 623 S.W.2d 699, 708 (Tex.Civ.App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.); *Bill Hendrix Auto Parts v. Blackburn,* 433 S.W.2d at 241.

We have reviewed the entire record and are not persuaded that the amount of damages awarded are so excessive as to indicate a disregard of the evidence by the jury, nor, under the facts of the case, does the amount awarded offend the conscience of this court so as to require a remittitur.

Judgment is affirmed.