HOME BUYERS V HAND 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-92-033-CV





HOME BUYERS WARRANTY CORPORATION, BUILDERS STRUCTURAL 


SERVICES, INC., II, AND NATIONAL HOME INSURANCE COMPANY,




 APPELLANTS


vs.





BRIAN M. HAND AND EVELYN HOWARD-HAND,




 APPELLEES



 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT



NO. 476,720, HONORABLE J. NEIL DANIEL, JUDGE PRESIDING



 




 Appellees Brian M. Hand and Evelyn Howard-Hand (the Hands) brought suit
against appellants Home Buyers Warranty Corporation, Builders Structural Services, Inc. II, and
National Home Insurance Company (collectively, "Home Buyers") for breach of an express
warranty, breach of the duty of good faith and fair dealing, and deceptive trade practices. After
a jury trial, the district court rendered judgment in favor of the Hands. Home Buyers brings six
points of error. We will affirm the judgment.



BACKGROUND


 Austin JS Corporation ("Austin JS"), a construction company, built a new house
for the Hands. The Hands received a booklet from Home Buyers informing them that as buyers
from Austin JS, they automatically obtained a warranty wherein Home Buyers promised to repair
certain construction defects to the house if Austin JS was unable to do so first. The Hands soon
noticed that most of the windows and the garage roof leaked during wet weather. They notified
Austin JS of this problem, but it did not repair the defects. The Hands then filed a claim with
Home Buyers, which sent out adjusters and hired a contractor, Austin Imperial Construction, Inc.
("Austin Imperial"), to repair the Hands' house. (1) The leaks reappeared after the attempted
repairs, however, and the Hands notified Home Buyers of this situation. Home Buyers refused
to pay for further repairs, and the Hands subsequently brought this action in district court.



GOOD FAITH


 Home Buyers' first point of error complains about the trial court's failure to submit
its requested jury issue inquiring whether Home Buyers had acted in good faith when it attempted
to repair the Hands' home. Home Buyers asserts such an issue is required under the Residential
Construction Liability Act ("the Act"). (2)

 Section 27.002 of the Act provides, "This chapter applies to any action to recover
damages resulting from a construction defect." Section 27.001(2) defines "construction defect"
as "a matter concerning the design, construction, or repair of a new residence . . . on which a
person has a complaint against a contractor." A "contractor" is "a person contracting with an
owner for the construction or sale of a new residence constructed by that person or . . . repair of
a new and existing residence." Act § 27.001(3). The Act governs claims involving the quality
of residential construction that homeowners previously had brought under theories of negligence,
express warranty of construction of such quality, implied warranty of good and workmanlike
construction, and deceptive or unconscionable conduct under the Texas Deceptive Trade
Practices--Consumer Protection Act ("DTPA"). (3) See John T. Montford, Will G. Barber, & Robert
L. Duncan, 1989 Texas DTPA Reform, 21 St. Mary's L. J. 525, 575 (1990).

 The Hands have not sued Home Buyers for damages relating to the quality of the
original construction of their home or Austin Imperial's attempted repairs; instead, they sued for
breach of an express warranty that defects in their home would be repaired. (4) The Act applies only
to damages resulting from construction defects, which are not at issue in this case.

 Even assuming Home Buyers is a "contractor" under the Act, it was not entitled
to its requested jury instruction on good faith. We first note that Home Buyers cannot be
considered a contractor in relation to the original home constructed by Austin JS. Section 7(D)
of Home Buyers' warranty booklet states, "This warranty is independent of the contractual
arrangement between the Homebuyer and the Builder for the construction of the Home." 
Therefore, Home Buyers could only be a contractor if Austin Imperial was its agent for purposes
of the attempted repairs of the Hands' house.

 Assuming the Hands were suing Home Buyers over the quality of Austin Imperial's
repairs, they were required to give written notice of the construction defects. Act § 27.004(a). (5) 
Home Buyers could then make a settlement offer detailing repairs to correct the construction
defects and subsequently perform these repairs. Act § 27.004(b). Section 27.004(f) of the Act
provides, "If suit is filed after a contractor makes repairs as provided by this section, the claimant
may not be awarded damages . . . unless the trier of fact finds that the attempt to repair was not
made in good faith." (emphasis added). Home Buyers argues this provision required the trial
court to submit its jury question on good faith. However, section 27.004(f) only applies when the
contractor makes repairs after the homeowner notifies him that his previous work was defective. 
In this case, neither Austin Imperial nor any other company performed any repairs after the Hands
notified Home Buyers that Austin Imperial's work was defective. Nor did Home Buyers make
any settlement offer. Section 27.004(e) of the Act expressly provides that defenses such as the
good faith exception do not apply if "a contractor fails to make an offer . . . [or] fails to repair
the defects. . . ." Home Buyers thus cannot rely upon any good faith defense. We overrule the
first point of error.



SPECIAL RELATIONSHIP


 Home Buyers' second point of error contends that there was legally and factually
insufficient evidence to support the jury's answer that a special relationship existed between Home
Buyers and the Hands. It does not challenge the submission of the issue.

 In deciding a legal-sufficiency or "no evidence" point, we must consider only the
evidence and inferences tending to support the finding of the trier of fact and disregard all
evidence and inferences to the contrary. Alm v. Aluminum Co. of Am., 717 S.W.2d 588, 593
(Tex. 1986), cert. denied, 111 S.Ct. 135 (1990); Garza v. Alviar, 395 S.W.2d 821, 823 (Tex.
1965). When determining a factual-sufficiency challenge, we must consider and weigh all the
evidence and should set aside the judgment only if it is so contrary to the overwhelming weight
of the evidence as to be clearly wrong and unjust. Cain v. Bain, 709 S.W.2d 175, 176 (Tex.
1986); see generally William Powers, Jr. & Jack Ratliff, Another Look at "No Evidence" and
"Insufficient Evidence," 69 Tex. L. Rev. 515 (1991).

 The trial court's question on a special relationship between the parties contained
this instruction:



You are instructed that a special relationship exists between the parties where, as
a result of the nature of their relationship or of the dealings between them, there
exists [an] unequal bargaining position; or there is an element of trust necessary
to accomplish the goals of the contract; or where one is justified in placing
confidence in the belief that the other will act in his best interest.



 The supreme court, in holding a special relationship exists between an insurer and
its insured, stated: "[A] special relationship arises out of the parties' unequal bargaining power
. . . which would allow unscrupulous insurers to take advantage of their insureds' misfortunes in
bargaining for settlement or resolution of claims . . . . An insurance company has exclusive
control over the evaluation, processing and denial of claims." Arnold v. National County Mut.
Fire Ins. Co., 725 S.W.2d 165, 167 (Tex. 1987).

 The record contains sufficient evidence of the parties' unequal bargaining power
to support the jury's finding that a special relationship existed between Home Buyers and the
Hands. There is evidence that Home Buyers had a high degree of control over the details and
timing of the warranty claim's processing and over the interpretation of the warranty contract. 
Home Buyers could decide whether to repair the damaged house or make a cash settlement with
the Hands. Home Buyers had the authority to hire the repair contractor of its choice. Home
Buyers could decide which part of the warranty claim was valid and which part would be rejected. 
This evidence also supports the conclusion that the Hands had to trust Home Buyers to accomplish
the goal of their warranty contract, the repair of their home. Home Buyers sent an adjuster to
determine the extent of the damage to the Hand's home and several contractors to submit bids on
the costs of repairing the damage. This is evidence that the Hands were justified in their
confidence that Home Buyers would act in their best interest. Having found sufficient evidence
to support the jury's answer, we overrule Home Buyers' second point.



GOOD FAITH AND FAIR DEALING


 Home Buyers' third point of error contends there was legally and factually
insufficient evidence to support the jury's answer that Home Buyers breached its duty of good
faith and fair dealing. This duty arises when a special relationship exists between the parties to
a contract. Arnold, 725 S.W.2d at 167. The jury found such a special relationship between the
Hands and Home Buyers.

 The trial court instructed the jury that a breach of the duty of good faith and fair
dealing occurred if Home Buyers denied the Hands' claim "without a reasonable basis for doing
so and when [Home Buyers] knew or should have known that there was not a reasonable basis for
doing so." Again, Home Buyers does not attack the submission of the issue or the form of
submission.

 The record contains sufficient evidence to support the jury's finding that Home
Buyers had no reasonable basis for denying the Hands' claim. Home Buyers performed a walk-through inspection of Austin Imperial's work in the house, but did not inspect the garage or
initiate any detailed follow-up investigation. Further, it failed to respond to repeated inquiries
from the Hands. At first, it insisted the stains in the home might be the result of normal
condensation from the windows. Its ultimate reason for rejecting the claim was its insistence that
the Hands had never filed a second complaint. The Hands, however, continued complaining about
the original construction defects, for which they had already filed a complaint and which remained
unrepaired. The record evidence also supports the conclusion that Home Buyers knew or should
have known that its rejection of the Hands' claim was unreasonable. Home Buyers knew about
the Hands' repeated inquiries after the completion of Austin Imperial's attempted repairs. Home
Buyers' rationale for rejecting the Hands' claim changed over time, showing it was well aware
of the status of the Hands' complaints. Having found sufficient evidence to support the jury's
answer, we overrule the third point of error.



EXCLUSION OF EVIDENCE


 Home Buyers' fourth point concerns the trial court's refusal to allow appellants'
counsel to cross-examine Howard-Hand about her salary and other financial information. Home
Buyers argues it was entitled to introduce evidence to impeach her testimony that she and her
husband could not afford to repair the damage caused by the leaks in their home in the period
between the rejection of their claim and trial. Home Buyers insists the Hands' financial condition
was relevant to its defense that the Hands had failed to mitigate their damages.

 Evidence of a party's financial condition is generally inadmissible on the issue of
damages. Murphy v. Waldrip, 692 S.W.2d 584, 588 (Tex. App.--Fort Worth 1985, writ ref'd
n.r.e.); see also Lunsford v. Morris, 746 S.W.2d 471 (Tex. 1988) (evidence of party's net worth
admissible only when exemplary damages are sought). Here, Home Buyers attempted to
introduce evidence of the Hands' ability to pay for repairs. The standard for mitigation of
damages, however, is what a reasonable person would have done under similar circumstances. 
Moulton v. Alamo Ambulance Serv., Inc., 414 S.W.2d 444, 447 (Tex. 1967). The parties
disputed the reasonable cost of repairing the Hands' home, the relevant test when mitigation of
damages is a disputed issue. See Pulaski Bank & Trust Co. v. Texas Am. Bank, 759 S.W.2d 723,
735 (Tex. App.--Dallas 1988, writ denied) (defendant must prove damages could have been
mitigated with slight expense and reasonable effort). The trial court did not err in excluding
evidence of the Hands' actual financial condition; this evidence was irrelevant to the reasonable
cost of repairing the Hands' home. See Tex. R. Civ. Evid. 401.

 Moreover, even if the evidence of the Hands' financial condition were admissible,
Home Buyers has failed to show how the exclusion of this evidence was reasonably calculated to
cause and probably did cause the rendition of an improper judgment. See Tex. R. App. P.
81(b)(1); Tex. R. Civ. Evid. 103. The jury failed to find that the Hands had failed to mitigate
the damages they sought at trial, and Home Buyers does not show how the jury's answer would
be against the great weight of the evidence even if the Hand's financial condition had been
admitted. Home Buyers is required to do so, as it had the burden at trial to prove its mitigation
defense. Pinson v. Red Arrow Freight Lines, Inc., 801 S.W.2d 14, 16 (Tex. App.--Austin 1990,
no writ). We overrule Home Buyers' fourth point of error.



MENTAL ANGUISH DAMAGES


 The fifth point of error complains there was legally and factually insufficient
evidence to support the jury's answer awarding the Hands $8,000 in damages for their mental
anguish resulting from Home Buyers' failure to repair the Hands' home as warranted.

 In order to establish mental anguish, a plaintiff must show more than mere worry,
anxiety, vexation, embarrassment, or anger. H.O.W. Ins. Co. v. Patriot Fin. Servs. of Tex., Inc.,
786 S.W.2d 533, 542 (Tex. App.--Austin 1990, writ denied). Mental anguish is defined as
emotional pain, torment, and suffering. Moore v. Lillebo, 722 S.W.2d 683, 688 (Tex. 1986). 
This Court has held that evidence of emotional trauma resulting from water damage to one's house
can support a claim of mental anguish. H.O.W. Ins., 786 S.W.2d at 542; see also City of
Watauga v. Taylor, 752 S.W.2d 199, 204 (Tex. App.--Fort Worth 1988, no writ). The plaintiff
in H.O.W. Insurance was distressed by the constant leaking of water into her residence; she was
under constant pressure attempting to get the problem fixed; and she was unable to use her
residence as a home. H.O.W. Ins., 786 S.W.2d at 542.

 Hand testified that the constant leaking in the house had caused him great distress
and led the couple to seek marriage counseling. He also testified that he could no longer feel
comfortable in his own home. Howard-Hand corroborated this description in her testimony. This
record contains sufficient evidence to support the jury's finding of mental anguish damages. 
Therefore, we overrule Home Buyers' fifth point of error.



COMPARATIVE NEGLIGENCE


 In its sixth point of error, Home Buyers argues that, with respect to the Hands'
claim of breach of the duty of good faith and fair dealing, the trial court should have submitted
a jury question concerning the comparative negligence of the Hands based on their delay in
complaining about the leaks. Home Buyers cites no authority holding that such a question is
relevant when a breach of the duty of good faith and fair dealing is alleged. This cause of action
does not flow from the failure to exercise ordinary care, which is the central issue in a negligence
action. Brotherhood's Relief & Compensation Fund v. Cawthorn, 815 S.W.2d 254, 258 (Tex.
App.--El Paso 1991, writ denied). The Hands did not allege Home Buyers had acted negligently;
thus, their own negligence was not in issue. Furthermore, the jury failed to find that the Hands
unreasonably delayed in asserting their rights after Austin Imperial's attempted repairs failed. 
Home Buyers does not attack this answer, which involves the conduct by the Hands that Home
Buyers argues was negligent. The trial court's refusal to submit the proffered question on
comparative negligence was not reversible error. We overrule the sixth point.

 We affirm the judgment of the district court.



 

 Marilyn Aboussie, Justice 

[Before Justices Powers, Aboussie, and B. A. Smith]

Affirmed

Filed: May 26, 1993

[Do Not Publish]

1.   Austin JS filed for bankruptcy and is not a party to this appeal. Austin Imperial,
although a co-defendant below, has not joined this appeal.
2.   All citations to the Act refer to Tex. Prop. Code Ann. §§ 27.001-.005 (West Supp.
1993).
3.   Tex. Bus. & Com. Code Ann. §§ 17.41-.63 (West 1987 & Supp. 1993).
4.   In the Hands' petition, only Austin Imperial is alleged to have breached an implied or
express warranty that its repairs were conducted in a good and workmanlike manner. The
express warranty, good faith and fair dealing, and DTPA claims against Home Buyers are
unrelated to and separate from this allegation. 
5.   The record reflects the Hands notified Home Buyers of the ineffectiveness of the
repairs. Home Buyers did not object to lack of notice by filing a plea in abatement, and it
does not complain about this issue on appeal; accordingly, it has waived any complaint on
the matter. See Hines v. Hash, 843 S.W.2d 464, 468 n.4 (Tex. 1992) (where defendant waived
right to notice of DTPA action by failing to request plea in abatement, court cited Act § 27.004
as analogous notice requirement).